1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIAM ADAM KRISKE,

11              Petitioner,                    No. CIV S-08-1683 JAM DAD P

12        vs.

13   WARDEN EVANS,

14              Respondent.                    FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered

18   against him on May 31, 2005 in the Sacramento County Superior Court on charges of first-degree

19   burglary, attempted car-jacking, and resisting an officer.  Petitioner asserts four grounds for

20   habeas relief: (1) ineffective assistance of trial counsel based upon a failure to present evidence;

21   (2) ineffective assistance of trial counsel for failure to investigate; (3) ineffective assistance of

22   appellate counsel; and (4) the trial court erred in denying petitioner's request to represent himself

23   at trial.  (Pet. at 3-8 & Attach. A.)[1]  Upon careful consideration of the record and the applicable

24   ─────────────

25        [1]  Petitioner originally raised a fifth claim that the trial court erred in failing to instruct the
     jury on the defense of voluntary intoxication.  However, petitioner has previously withdrawn that
26   claim by motion.  (See Doc. Nos. 28 and 29.)

                                                1

law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

## FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal[2], the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury convicted defendant William Adam Kriske of first degree burglary (Pen. Code, § 459 - count 1; undesignated section references are to this code), attempted carjacking (§§ 664/215, subd. (a) - count 2), and resisting an executive officer with force or violence (§ 69 - count 3). In connection with count 1, the jury found true that another person, other than an accomplice, was in the burglarized residence making the offense a violent felony (§ 667.5, subd. (c)(21)). In bifurcated proceedings, the trial court found two strike priors (§§ 667, subds.(b) - (i), 1170.12), one prior serious felony (§ 667, subd. (a)), and three prior prison term allegations (§ 667.5, subd. (b)) to be true.
>
> The court sentenced defendant to state prison for an indeterminate term of 75 years to life and a determinate term of eight years.
>
> Defendant appeals. He contends (1) the trial court erroneously denied his request to represent himself (Faretta v. California (1975) 422 U.S. 806 [45 L. Ed.2d 562] (Faretta)), (2) insufficient evidence supports his convictions for first degree burglary and attempted carjacking and (3) the trial court erroneously excluded the introduction of exculpatory evidence. We affirm the judgment.
>
> **Facts and Proceedings**
>
> About 9:00 p.m. on February 5, 2004, Paul R. heard a loud noise in his backyard. His dog started barking and then ran to the sliding glass door in the living room. Paul R. went to the door and saw a Caucasian man who tried to open the patio door. When Paul R. made eye contact with the man, the man turned around, kicked over a barbecue, and left the back yard in the direction of a house next door belonging to Carolyn L. Paul R. called 911.
>
> Later, Paul R. found that a section of the fence he shared with his other neighbor, Suzanne H., had been knocked down. Next to the

/////

---

[2] Notice of Lodging Documents on October 14, 2008 (Doc. No. 9), Resp't's Lod. Doc. 6 (hereinafter Opinion).

fence between his yard and Carolyn L.'s, Paul R. discovered a milk crate, which earlier had been near his house.

About 9:10 p.m., Carolyn L. and three friends, Thomas B., Melissa G. and Heather P., were sitting in Carolyn L.'s family room watching television when someone, later identified as defendant, tried without success to open the sliding glass door.  Thomas B. moved the blinds, looked out of the window and saw defendant holding what appeared to be a crowbar or a large stick, possibly an axe handle, in a position ready to hit the door.  Thomas B. yelled to the others to run.  Melissa G. saw defendant break the glass and then he chased her, Heather P. and Thomas B. out the front door. Melissa G. later told an investigator that it appeared that defendant was "on something."

Meanwhile, Carolyn L. went to her bedroom and got a gun.  She went back into the family room and saw that the front door was open and the sliding glass door was broken.  Defendant "saunter[ed]" from the kitchen area to the family room and stood in front of the television at which point Carolyn L. fired a shot over his head.  Defendant put his hands over his ears, screamed and looked at Carolyn L.  He then ran past Carolyn L. through the family room and dining room and Carolyn L. fired another shot over his head as she yelled "stop, freeze."

Defendant ran down some stairs into the garage, which had been converted into the front room of the house.  He pulled down some wooden shutters and tried unsuccessfully to break the glass behind them.  Defendant turned towards Carolyn L., who was about 20 feet away, and she fired again until her gun was empty.  Defendant ran back to the glass and kicked it.  Carolyn L. went to her bedroom, got another gun, and went back to the front room where defendant had kicked and "stumbl[ed] over things" and was continuing to do so.  She yelled at him to stop and fired her gun about three times towards the noise but high so she would not hit him.  Glass shattered as defendant crashed through a window next to the front door.

As Carolyn L. went to the front door, she saw an axe handle on the floor near the entrance to the kitchen.  It belonged to her and had been outside next to the sliding glass door.  At the front door, Carolyn L. saw defendant crawling backwards towards her on a ledge at the front of the house.  He got off the ledge onto the front porch, turned around and faced her, two feet away.  She shot at him but he did not react so she shot at him again.  She thought she shot him in the arm and there was blood on her porch.  Defendant turned and ran towards the street.

During the whole time, Carolyn L. was fearful and did not know whether someone else was in her home.  As a former correctional officer, Carolyn L. had been trained to shoot to wound or kill

3

inmates.  She did not consider defendant's reactions to be normal, his eyes were "huge," his "demeanor was erratic" and he never said anything.  Carolyn L. fired a total of nine shots at defendant.

Defendant ran across the street and climbed on a motorcycle parked in a driveway, but as he did, the owner and the owner's friends came out and chased defendant away.  After defendant fled, the motorcycle was covered in blood.

Defendant, bleeding and shirtless with a T-shirt wrapped around his left arm, ran down the street toward a church.  According to Lisa S. who stood in the church parking lot, defendant looked "really delirious, like he was out of it," possibly in "shock" and "didn't look like he was all there at the time."  According to witnesses, defendant was incoherent, "delirious," "out of it," staggering and "stumbling," walking "in a daze" or "dizzily," possibly "intoxicated."

Defendant approached Kristopher A. who was in or near his pickup truck in the church parking lot.  Defendant mumbled to Kristopher A. to "get out, mother fucker" or "get out of my way, or come here," and grabbed Kristopher A.'s shirt with both hands. Kristopher A. thought defendant might have been intoxicated. Kristopher A. pushed defendant back and said to "get the F out of here."  Another man came to Kristopher A.'s aid and defendant stumbled down the street with others in pursuit.

A motorcycle patrol officer arrived and asked defendant if he was injured or needed help.  Defendant ignored him and continued to walk down the street.  The officer followed him and again asked if defendant needed help.  At this point, defendant ran across a street to a parking lot.  Again, the officer followed and then ordered defendant to stop and sit down.  Defendant did.  Although to the officer defendant seemed alert and not dazed, defendant mumbled and was agitated and uncooperative.  Defendant had a gunshot wound on his wrist or forearm.

Sheriff deputies and paramedics arrived at the parking lot.  A paramedic described defendant as agitated and irritable and, when questioned, defendant became more agitated, responding repeatedly with profanity and abusive language.  He refused to identify himself or disclose his medical history although at one point he claimed his name was Robert Gerberding.

Defendant was strapped to a gurney and put into the ambulance. Defendant unbuckled one strap on the gurney and, although told not to, he reached for the second strap.  When Deputy Sheriff David Perkins put his hand on top of defendant's hand, defendant unbuckled the second strap, threw Perkins's hand off, got up and came at Perkins.  They struggled.  Even though threatened with pepper spray by Deputy Francis Nervo, defendant refused the

4

deputy's order to get back on the gurney.  Several deputies
eventually handcuffed defendant.

On the way to the hospital, Deputy Nervo asked defendant if he
tripped over a barbecue in a backyard and defendant replied, "No, I
kicked it over."  Defendant continued to claim he was Robert
Gerberding but had no identification on him.  Deputy Nervo said
defendant did not display symptoms suggesting that he was under
the influence of alcohol or drugs.

At the jail, it took several deputies to get defendant's fingerprints.
Once they identified him they found he was wanted on another
matter.

Angela A. testified that earlier in the evening, defendant, who was
a family friend, stopped by her house, which was on the same street
as Carolyn L.'s house.  Defendant walked in the house without
knocking or ringing the bell, something he had never previously
done.  He seemed "anxious" and "wild" or "crazy-looking."  He
was sweaty and did not seem normal.  Defendant asked where her
husband was and she said her husband was in the garage.  Based on
prior experiences with family members as well as her husband,
Angela A. associated defendant's symptoms with illegal drug use.
She admitted on cross-examination that defendant did not mumble
when he asked where he could find her husband.

PROCEDURAL BACKGROUND

Petitioner appealed from his conviction to the California Court of Appeal for the

Third Appellate District.  On October 30, 2006, the judgment of conviction was affirmed.

(Resp't's Lod. Doc. 6.)

On December 5, 2006, petitioner filed a petition for review with the California

Supreme Court.  (Resp't's Lod. Doc. 7.)  On January 17, 2007, the California Supreme Court

summarily denied the petition for review.  (Resp't's Lod. Doc. 8.)

On May 29, 2007, petitioner filed a petition for writ of habeas corpus in the

California Court of Appeal for the Third Appellate District, claiming that his trial and appellate

counsel had rendered ineffective assistance.  (Resp't's Lod. Doc. 12.)  On July 5, 2007, the

California Court of Appeal denied that petition with citations to In re Steele, 32 Cal.4th 682, 692

(2004) and In re Hillery, 202 Cal. App.2d 293 (1962).  (Id.)

/////

1    On July 11, 2007, petitioner filed a habeas petition in the Sacramento County

2  Superior Court, raising the same claims of ineffective assistance by trial and appellate counsel

3  that he had raised in his habeas petition filed in the California Court of Appeal.  (Resp't's Lod.

4  Doc. 9.)  On August 23, 2007, the Superior Court denied that petition in a reasoned decision on

5  the merits.  (Resp't's Lod. Doc. 10.)

6    On October 19, 2007, petitioner filed a petition for writ of habeas corpus in the

7  California Supreme Court, again claiming that his trial and appellate counsel rendered ineffective

8  assistance.  (Resp't's Lod. Doc. 13.)  That petition was summarily denied by order dated April 9,

9  2008.  (Resp't's Lod. Doc. 14.)

10    On July 22, 2008, petitioner filed his federal habeas petition in this court.

11  Respondent filed an answer on October 14, 2008, and petitioner filed a traverse on March 10,

12  2009.

13    ANALYSIS

14  I.  Standards of Review Applicable to Habeas Corpus Claims

15    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

16  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

17  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

18  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

19  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

20  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

21  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

22  (1972).

23    This action is governed by the Antiterrorism and Effective Death Penalty Act of

24  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

25  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

26  habeas corpus relief:

6

1
2
3
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

4
5
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6
7
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

9  (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

10  does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

11  of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

12  also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

13  we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

14  error, we must decide the habeas petition by considering de novo the constitutional issues

15  raised.").

16  　　　　The court looks to the last reasoned state court decision as the basis for the state

17  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

18  state court decision adopts or substantially incorporates the reasoning from a previous state court

19  decision, this court may consider both decisions to ascertain the reasoning of the last decision.

20  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

21  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

22  habeas court independently reviews the record to determine whether habeas corpus relief is

23  available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v.

24  Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached

25  the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

26  deferential standard does not apply and a federal habeas court must review the claim de novo.

1    Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

2    II.  Petitioner's Claims

3         A.  Ineffective Assistance of Counsel

4              Petitioner claims that his trial counsel rendered ineffective assistance by: (1)

5    failing to present evidence to support a defense based upon voluntary intoxication; and (2) failing

6    to investigate a defense of voluntary intoxication and/or self-defense.  (Pet. at 13-21.)  Petitioner

7    also claims that his appellate counsel rendered ineffective assistance in failing to raise a claim of

8    ineffective assistance of trial counsel on appeal.  (Id. at 22-23.)  After setting forth the applicable

9    legal principles, the court will evaluate these claims in turn below.

10        1.  Legal Standards

11             The Sixth Amendment guarantees the effective assistance of counsel.  The United

12   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

13   Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

14   counsel, a petitioner must first show that, considering all the circumstances, counsel's

15   performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a

16   petitioner identifies the acts or omissions that are alleged not to have been the result of

17   reasonable professional judgment, the court must determine whether, in light of all the

18   circumstances, the identified acts or omissions were outside the wide range of professionally

19   competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

20   petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

21   466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

22   counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

23   694.  A reasonable probability is "a probability sufficient to undermine confidence in the

24   outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

25   (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

26   deficient before examining the prejudice suffered by the defendant as a result of the alleged

8

1   deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

2   sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955

3   (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

4           Defense counsel has a "duty to make reasonable investigations or to make a

5   reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at

6   691.  "This includes a duty to . . . investigate and introduce into evidence records that

7   demonstrate factual innocence, or that raise sufficient doubt on that question to undermine

8   confidence in the verdict." Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v.

9   Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)).   In this regard, it has been recognized that "the

10  adversarial process will not function normally unless the defense team has done a proper

11  investigation." Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998) (citing

12  Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)).  Therefore, counsel must, "at a minimum,

13  conduct a reasonable investigation enabling him to make informed decisions about how best to

14  represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting

15  Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted)).

16  On the other hand, where an attorney has consciously decided not to conduct further investigation

17  because of reasonable tactical evaluations, his or her performance is not constitutionally

18  deficient.  See Siripongs II, 133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.

19  1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995).  "A decision not to investigate thus

20  'must be directly assessed for reasonableness in all the circumstances.'" Wiggins, 539 U.S. at

21  533 (quoting Strickland, 466 U.S. at 691).  See also Kimmelman, 477 U.S. at 385 (counsel

22  "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at

23  1173-74.

24          A reviewing court must "examine the reasonableness of counsel's conduct 'as of

25  the time of counsel's conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990)

26  (quoting Strickland, 466 U.S. at 690).  Furthermore, "'ineffective assistance claims based on a

9

duty to investigate must be considered in light of the strength of the government's case.'"  Bragg,

242 F.3d at 1088 (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).  In

assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that

counsel's performance falls within the 'wide range of professional assistance.'"  Kimmelman,

477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).  There is in addition a strong presumption

that counsel "exercised acceptable professional judgment in all significant decisions made."

Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

    2.  Trial Counsel

        a.  Failure to Present Evidence to Support a Defense of Voluntary Intoxication

        Petitioner's first claim is that his trial counsel rendered ineffective assistance in

failing to introduce into evidence at trial a document which demonstrated that petitioner was

placed in the "jail detox ethyl alcohol protocol unit shortly after his arrest."  (Pet. at 13.)

        The state court record reflects that the trial court and all counsel engaged in a

discussion about the exhibits the prosecutor wished to introduce into evidence.  (Reporter's

Transcript on Appeal (RT) at 486-87.)  One of those exhibits was a two-page booking document

(proposed exhibit 80), consisting of a "property report and a special needs form," which were

"stapled together."  (Id. at 487.)  The trial court made the following explanatory statements

during that discussion with regard to proposed exhibit 80:

> The first page does have foundation.  It is something that Deputy Nervo had testified to, the fact that when he – at the time he was booked he had no property.  And he distinguished defendant's property from items that were booked into evidence.
>
> The second page doesn't have any foundation, doesn't need to come in.  It does reference sort of a housing issue with regard to the defendant, like where he was housed once he was brought into the jail.
>
> I – if it can be separated from the second page, that's fine, if counsel doesn't have any problem with the fact that the certification of that document is actually of the back of the second page.

/////

10

1  (Id. at 488.)  Petitioner's trial counsel raised an objection to the "property report" portion of the

2  exhibit (page 1), but did not raise any objection to the portion of the exhibit that referred to

3  petitioner's housing placement when he entered the jail (page 2).  (Id. at 487-88.)  Accordingly,

4  page 2 of the exhibit was returned to the prosecutor.  (Id. at 488-89.)

5  Shortly thereafter, petitioner's trial counsel made an offer of proof regarding

6  proposed defense witness Dr. Hambley.  (Id. at 512.)  Counsel stated that Dr. Hambley reviewed

7  petitioner's medical records and "came to the conclusion that [petitioner] was admitted into the

8  ethyl alcohol protocol based upon information that [petitioner] provided the receiving nurse, and

9  that he was placed in that protocol shortly – relatively shortly after being booked into the county

10  jail."  (Id.)  Counsel explained that he wished to introduce Dr. Hambley's testimony for the

11  purpose of showing petitioner was "placed on the ethyl alcohol protocol."  (Id.)  Defense counsel

12  also explained that

> Dr Hambley would also testify that [petitioner] was not placed in a
> drug protocol, because when a person indicates that they're an
> alcoholic or have heavily used alcohol, that – and are suffering or
> may reasonably be expected to suffer withdrawal symptoms, that
> that gets top precedence and priority.
>
> So there is – is no record one way or the other in the medical
> records about a drug detox protocol, but there – there is ample
> information about the alcohol detox protocol.

18  (Id.)  The prosecutor argued that Dr. Hambley's proposed testimony was inadmissible because it

19  was based on petitioner's hearsay statements to the jail nurse that he had drunk "approximately a

20  fifth of whiskey and had also taken maybe about a gram of heroin."  (Id. at 513.)  The prosecutor

21  also complained that "there [were] no observations made by any jail personnel of the defendant's

22  physical condition upon intake anywhere in these medical records."  (Id.)

23  The trial court excluded Dr. Hambley's proposed testimony to the effect that

24  petitioner was placed in the jail's alcohol detoxification unit, ruling as follows:

> Well, it seems what is being presented as potential evidence for the
> defense is the fact that the defendant was housed in a particular
> way or in a particular unit in the jail is evidence from which the

jury would ask to be – infer something about his state of sobriety or his level of intoxication at the time of the commission of the offense.

And the evidence that's presented to me is that the procedure or the decision to place him in a unit was based, at least in this case, on a standard procedure that if someone being booked in the jail states that they have used such substances, they are placed in that unit.

And in this particular case there are no opinions by the jail personnel based on their actual percipient observations of a level of intoxication or lack thereof.  There's – it's apparently silent as to that.

So I do have the same concerns regarding the fact that this determination is based solely on hearsay of the defendant, which is not admissible.

And secondly, it is open to wide speculation as to, number one, what, if anything, the jury can properly infer, therefore, from the fact that he was housed in that particular unit.  And therefore, I think you have a relevance problem, 'cause what does that really tell them?

(Id. at 515.)

Petitioner argues that the second page of proposed Exhibit 80 would have demonstrated to the jury "the extent and level" of his intoxication at the time of the crimes and would have supported a defense that, because of voluntary intoxication, he was unable to form the specific intent required for a conviction on the charges of burglary and attempted carjacking. (Pet. at 13-17; Points and Authorities attached to Traverse (P&A) at 3.)  Petitioner contends that his trial counsel's failure to introduce this page of the exhibit into evidence at trial constituted ineffective assistance.

The Sacramento County Superior Court rejected petitioner's arguments in this regard, reasoning as follows:

I.  The Ineffective Assistance of Counsel Claims Are Without Merit

A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case entitling him to relief.  (In re Bower (1985) 38 Cal.3d 865, 872.)  A petition for writ of habeas corpus should attach as exhibits all reasonably available documentary

evidence or affidavits supporting the claim. (People v. Duvall (1995) 9 Cal.4th 464, 474.)

In evaluating ineffective assistance of trial court counsel, "a defendant must first show counsel's performance was 'deficient' because his or her 'representation fell below an objective standard of reasonableness . . . under prevailing norms.'" (In re Harris (1993) 5 Cal.4th 813, 832-833; citing Strickland v. Washington (1984) 466 U.S. 668 and People v. Pope (1979) 23 Cal.3d 412; see also In re Scott (2003) 29 Cal.4th 783, 811-812.)

In applying the first part of the test, courts are directed to be highly deferential. A petitioner claiming ineffective assistance must overcome a presumption that, considering all of the circumstances, counsel's actions "might be considered sound trial strategy." (Strickland, supra, 466 U.S. at p. 689.) In the second part of the test, a petitioner "must also show prejudice flowing from counsel's performance or lack thereof. [cites omitted] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [cites omitted]" (Strickland, supra, 466 U.S. at p. 689.)

Finally, courts are advised that it is frequently easier to resolve an ineffective assistance claim by looking first at the issue of prejudice; if none is established, then it will be unnecessary to consider counsel's performance. (In re Fields (1990) 51 Cal.3d 1063, 1077.)

\* \* \*

Petitioner next claims that his trial counsel was ineffective for not fully developing his voluntary intoxication defense. He alleges that counsel failed to offer the second page of a County Jail booking document which would have shown he was placed into the jail's detox ethyl alcohol unit shortly after he was arrested.

These allegations do not establish that trial counsel was deficient. As seen from the exhibits attached to his petition (trial transcripts), the document referred to did not reflect that Petitioner had been placed in a detox unit, only that he was housed in a medical unit when he was booked in the County Jail.

Further, even assuming the document did show he was housed in the detox unit, which it did not, Petitioner cannot establish prejudice. As seen from the Third District Court of Appeal's opinion affirming his conviction, even if evidence regarding Petitioner being placed in the ethyl alcohol unit was not offered at trial, there was abundant evidence offered at trial regarding Petitioner's bizarre behavior on the night in question. Several

1   witnesses testified that his conduct appeared to be alcohol or drug
2   induced.  Thus it is not reasonably probable that Petitioner would
    have obtained a different result at trial had the second page of the
3   booking document been offered in evidence.

4   (Resp't's Lod. Doc. 10 at 3-4.)

5           As set forth above, in considering his state habeas petition the Sacramento County

6   Superior Court concluded that any error by petitioner's trial counsel in failing to ensure that the

7   entire booking document was introduced into evidence was harmless because, even assuming

8   page 2 of the exhibit demonstrated that petitioner was housed in the alcohol detox unit when he

9   entered the jail, there was other significant evidence introduced at trial that petitioner was under

10  the influence at the time he committed the crimes.  Accordingly, it was not "reasonably probable

11  that Petitioner would have obtained a different result at trial had the second page of the booking

12  document been offered in evidence." (Resp't's Lod. Doc. 10 at 4.)  In order to grant habeas relief

13  where a state court has determined that a constitutional error was harmless, a reviewing court

14  must determine: (1) that the state court's decision was "contrary to" or an "unreasonable

15  application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered

16  prejudice from the constitutional error, as defined in <u>Brecht</u>.  <u>Mitchell v. Esparza</u>, 540 U.S. 12,

17  17-18 (2003)<i>;</i> <u>Inthavong v. Lamarque</u>, 420 F.3d 1055, 1059 (9th Cir. 2005).  Petitioner has failed

18  to meet either prong of this test.  In light of the trial evidence concerning petitioner's bizarre

19  demeanor at the time of the crimes (<u>see</u> Opinion at 4-5; RT at 297, 306, 312, 322, 498-99),

20  evidence that petitioner was placed in an alcohol detoxification unit upon entering the jail would

21  not have led to a different result at trial.  Further, as explained by the state trial court, even

22  assuming page 2 of exhibit 80 demonstrated petitioner was housed in the detoxification unit upon

23  entering the jail, the importance of such evidence was diminished by the fact that newly arriving

24  prisoners are routinely placed in the detox unit if they inform the admitting nurse that they are

25  "an alcoholic or have heavily used alcohol." (<u>See</u> RT at 512.)  Under these circumstances,

26  petitioner cannot demonstrate that he suffered prejudice from trial counsel's alleged error.

14

1    For the foregoing reasons, petitioner is not entitled to federal habeas relief on this

2  aspect of his claim that his trial counsel provided ineffective assistance.

3    b. Failure to Investigate a Defense of Voluntary Intoxication

4    Petitioner claims that his trial counsel rendered ineffective assistance by failing to

5  investigate a possible defense based upon voluntary intoxication or to present evidence in support

6  of such a defense at trial.  (Pet. at 18-21.)  In this regard, petitioner argues,

7        although trial counsel had both actual and constructive notice of
petitioner's "voluntary intoxication" he conducted no investigation
8        to ascertain the extent or possible ramifications of petitioner's
impairment.  Counsel's disregard for conspicuous pieces of
9        evidence that pointed to a fruitful trial strategy cannot be described
as anything short of defective representation.

10

11  (Id. at 19.)  Petitioner also faults his trial counsel for failing to find and introduce at trial evidence

12  from a medical expert "regarding the clearly documented reports of petitioner's 'voluntary

13  intoxication' at the time of the crime."  (Id.)  He argues that such evidence could possibly have

14  supported a defense based upon voluntary intoxication and/or self-defense.  (Id.)  In his traverse,

15  petitioner argues that "counsel's failure to investigate petitioner's crime, failure to examine the

16  evidence and failure to confer with petitioner concerning voluntary intoxication, did in fact

17  prejudice the petitioner."  (P&A at 3.)  Petitioner also claims that if his trial counsel had

18  conducted a more complete investigation into a possible defense based upon voluntary

19  intoxication, counsel may have been able to introduce evidence at trial from the intake nurse at

20  the jail regarding "petitioner's status upon arrest."  (Id. at 5.)

21    In denying petitioner habeas relief the Sacramento County Superior Court rejected

22  these arguments, reasoning as follows:

23        Petitioner's third claim is a slight variation from his second.  He
alleges that trial counsel was ineffective for failing to fully develop
24        his voluntary intoxication defense because he failed to investigate
his medical file.  He alleges that had he done so, counsel would
25        have discovered that Petitioner made statements to the nurse at the
intake unit.  He alleges the intake nurse wrote his file which
26        contains statements regarding his alcohol intake and heroin intake.

1    First, these allegations fail to establish deficient performance.
2    Other than referring to an intake nurse, petitioner does not say who
     this person is.  Further, it is not clear what the nurse would have
3    testified to.  That is, while he generally alleges that the file
     contained statements about his intoxication, he does not explain
4    what these statements consisted of.  As a result, the Court cannot
     conclude that his allegations constitute deficient performance for
5    failing to call the intake nurse as a witness.

6    Second, even assuming counsel was deficient, Petitioner cannot
     establish prejudice.  As discussed above in connection with his
7    second claim for relief, there was abundant evidence offered at trial
     regarding Petitioner's alleged intoxication.  Thus it is not
8    reasonably probable that Petitioner would have obtained a different
     result at trial had the intake nurse testified at trial.

9    (Resp't's Lod. Doc. 10 at 3-4.)

10           Petitioner has failed to demonstrate prejudice with respect to this claim.  Although

11   he argues that his trial counsel failed to investigate evidence that petitioner was intoxicated at the

12   time of the crime, he makes no specific allegations regarding what such an investigation would

13   have produced or how its omission, if any, prejudiced his defense.  Petitioner's suggested areas

14   of investigation are simply insufficient to establish prejudice.  As discussed above, there is no

15   evidence that page 2 of the prosecutor's proposed exhibit 80 would have lent meaningful support

16   to a defense based upon voluntary intoxication or led to a different result at trial.  With respect to

17   petitioner's suggestion that his trial counsel should have consulted a medical expert, petitioner

18   has not demonstrated that any expert would have agreed to testify, or that his/her testimony

19   would have supported a defense of voluntary intoxication or self-defense.  See Wildman v.

20   Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that a helpful expert could be found or

21   would testify on petitioner's behalf insufficient to establish prejudice); Bragg, 242 F.3d at 1088

22   (no ineffective assistance where petitioner did "nothing more than speculate that, if interviewed,"

23   a witness might have given helpful information); Dows v. Wood, 211 F.3d 480, 486 (9th Cir.

24   2000) (no ineffective assistance of counsel where there was no evidence in the record that a

25   helpful witness actually existed and petitioner failed to present an affidavit establishing that the

26   alleged witness would have provided helpful testimony for the defense); United States v. Berry,

                                                    16

814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet the prejudice prong of an ineffective assistance claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing).

Petitioner has also failed to show that the intake nurse at the jail would have been able to provide helpful testimony at trial. His vague allegations that she might have been able to support a defense of voluntary intoxication or self-defense are insufficient to establish prejudice. Moreover, as explained by the Sacramento County Superior Court, because there was already significant evidence introduced at his trial that petitioner was intoxicated at the time he committed his crimes, cumulative evidence on this point would not have led to a different result at trial. The Strickland standard "places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." Wong v. Belmontes, ___ U.S. ___, 130 S. Ct. 383, 390-391 (2009) (quoting Strickland, 466 U.S. at 694). Petitioner has failed to meet that burden with respect to this aspect of his ineffective assistance of counsel claim. Accordingly, he is not entitled to federal habeas relief.

3. Appellate Counsel

Petitioner claims that his appellate counsel rendered ineffective assistance in failing to raise the above-described claims of ineffective assistance of trial counsel on appeal. (Pet. at 22-23.) Petitioner states that he asked his appellate counsel to raise these issues, but counsel declined to do so. (Id.)

In denying habeas relief the Sacramento County Superior Court rejected petitioner's arguments in this regard, reasoning as follows:

> Petitioner claims that his appellate counsel was ineffective because he failed to raise the ineffectiveness of his trial counsel on appeal. First, ineffective assistance of counsel claims are not normally raised on appeal unless the claims are apparent on the face of the record. "'[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected." (People v. Wilson (1992) 3 Cal.4th 926,

17

1      936, quoting People v. Pope (1979) 23 Cal.3d 412, 426.)  Second, because Petitioner's ineffective assistance of counsel claims lack merit as discussed above, appellate counsel was not ineffective for failing to raise the claims on appeal.

4  (Resp't Lod. Doc. 10 at 4.)

5      The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

6  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

7  However, an indigent defendant "does not have a constitutional right to compel appointed

8  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

9  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

10  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

11  ability of counsel to present the client's case in accord with counsel's professional evaluation

12  would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

13  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

14  not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

15  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

16  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

17  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

18  context, petitioner must show that, but for appellate counsel's errors, he probably would have

19  prevailed on appeal.  Id. at 1434 n.9.

20      Petitioner has failed to demonstrate that his appellate counsel rendered ineffective

21  assistance.  Appellate counsel's decision to decline to present the issues suggested by petitioner

22  and to instead press only issues on appeal that he believed, in his professional judgment, had

23  more merit than the issues suggested by petitioner was "within the range of competence

24  demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970).

25  Further, for the reasons set forth above, this court has not found merit in any of the claims raised

26  in the instant petition.  Of course, petitioner's appellate counsel had no obligation to raise

meritless issues on appeal.  <u>Strickland</u>, 466 U.S. at 687-88.

Petitioner has failed to establish that the state court's rejection of his ineffective assistance claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Accordingly, he is not entitled to habeas relief on his claim of ineffective assistance by appellate counsel.

B.  <u>Right to Self-Representation</u>

Petitioner claims that his Sixth Amendment "right to self-representation" was violated when the trial court denied his request to represent himself at trial.  The California Court of Appeal described the background to this claim and its resolution thereof as follows:

> Defendant first contends the trial court erred when it denied his <u>Faretta</u> motion.  The trial court did not abuse its discretion.
>
> A complaint filed February 9, 2004, charged defendant with burglary, attempted carjacking, and forcefully resisting arrest.  He was arraigned the next day and the public defender was appointed to represent him.
>
> There was a preliminary hearing on June 2, 2004, and defendant was represented by the public defender.  At the conclusion of the hearing, defendant was held to answer as charged and the public defender was reappointed to represent him.  Trial was scheduled for July 27, 2004.
>
> On July 27, 2004, the trial date was vacated and reset to September 14, 2004.  On September 14, 2004, the public defender's office was relieved due to case overload and the trial court appointed counsel to represent defendant.  Trial was reset to October 20, 2004.
>
> The October 20, 2004, trial date was later vacated, and the trial date was continued and reset a number of times.  On March 15, 2005, the court set May 11, 2005, as the trial date with a trial readiness conference set for May 5, 2005.
>
> On May 5, 2005, defendant's court appointed attorney told the court that defendant wished to dismiss counsel pursuant to <u>People v. Marsden</u> (1970) 2 Cal.3d 118 (<u>Marsden</u>).  At the <u>Marsden</u> hearing, the court inquired as to defendant's reasons for his request.  Defendant claimed he had been "inadequately represented" and had

19

not "been getting [his] paperwork."  The court asked if there was anything else that he wished to say and defendant said there was not.

Defendant's attorney then replied that he believed that defendant had all the discovery, that defendant had asked for and received the discovery related to his priors.  He added that, a few days before, defendant had only asked for the "first couple hundred pages," which his attorney had to redact for addresses and phone numbers of the victims "which [defendant] now has."  Defendant's attorney said he was "perplexed."

Defendant said, "That's not true.  I've been asking for this for six months.  I never asked for the prior discovery that he already gave me.  I didn't even know nothing about that."

Upon the court's further inquiry, defendant's attorney explained that he had been practicing for 34 years with 80 percent of his practice being criminal matters.  He said he could not recall when he had been appointed although the record reflects that he was appointed on September 14, 2004.  Defendant's attorney said that a few days before the <u>Marsden</u> hearing was the "first time" defendant claimed he did not have the discovery.  The attorney stated he was surprised at that because he had made a copy for defendant and that it was his practice to give his client a copy of the discovery.

Defendant said he had nothing further to add on the motion.  His attorney confirmed that the attorney was ready for trial on the date that had been set, May 11, 2005.

At this point, defendant stated that he wished to "file a <u>Faretta</u> motion and go pro per."  The court asked, "Are you ready to go to trial next week?"  Defendant answered, "No."  The court stated, "Then it's too late.  I'm not going to accept it this late.  I consider that to be a delaying tactic.  I don't have to accept your <u>Faretta</u> motion at this time."  Defendant responded, "Okay."  The court then denied defendant's <u>Marsden</u> motion.

On May 11, 2005, the court conducted a pretrial conference with each attorney and discussed several preliminary matters.  On May 12, 2005, jury selection began.

"A criminal defendant has a right to represent himself at trial under the Sixth Amendment to the United States Constitution.  [Citations.]  A trial court must grant a defendant's request for self-representation if three conditions are met.  First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation.  [Citations.]  Second, he must make his request unequivocally.  [Citations.]  Third, he must make his request within a reasonable time before trial.  [Citations.]"  (<u>People v.</u>

Welch (1999) 20 Cal.4th 701, 729.)  A trial court may properly deny a Faretta motion made "in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice.'"  (People v. Barnett (1998) 17 Cal.4th 1044, 1087, quoting People v. Marshall (1997) 15 Cal.4th 1, 23.)

Further, "a defendant should not be allowed to misuse the Faretta mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice.  For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request.  In such a case the motion for self-representation is addressed to the sound discretion of the trial court which should consider relevant factors such as whether or not defense counsel has himself indicated that he is not ready for trial and needs further time for preparation . . . .  When the lateness of the request and even the necessity of a continuance can be reasonably justified the request should be granted.  When, on the other hand, a defendant merely seeks to delay the orderly processes of justice, a trial court is not required to grant a request for self-representation without any ability to test the request by a reasonable standard."  (People v. Windham (1977) 19 Cal.3d 121, 128, fn. 5 (Windham).)

Windham "did not fix any particular time at which a motion for self-representation is considered untimely, other than that it must be a reasonable time before trial."  (People v. Clark (1992) 3 Cal.4th 41, 99.)

"If a defendant makes a timely request for self-representation under [Faretta], his right to do so is unconditional and the trial court must grant the request.  However, 'timely' means 'within a reasonable time prior to commencement of trial' [citation], and a later request is within the discretion of the trial court to grant or deny. [Citation.]"  (People v. Rivers (1993) 20 Cal. App.4th 1040, 1048 (Rivers).)  "Windham instructs the trial court faced with an untimely request under Faretta to consider such factors as 'the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.' [Citations.]"  (Rivers, supra, at p. 1048.)  "Error in denying a timely Faretta motion is reversible per se.  [Citation.] However, once trial has commenced, the right to self-representation is no longer based on the Constitution. [Citations.]"  (Id. at p. 1050.)

Error in denying an untimely Faretta motion is subject to the harmless error standard of review under People v. Watson (1956)

46 Cal.2d 818 (Watson).  (Rivers, supra, 20 Cal. App.4th at p. 1050.)

Defendant argues that his request to represent himself was timely in that the trial date had been set, vacated and reset several times, trial had not yet commenced, trial was not scheduled to begin for a week, and the trial readiness conference was his earliest opportunity to make his Faretta motion.

Defendant also complains that the trial court did not inquire about the timing of defendant's Faretta motion, the prejudice the prosecution might suffer from a delay or the time defendant needed to prepare for trial.

Defendant claims meaningful appellate review is not possible in that the trial court failed to comply with Windham.  He argues: (1) reversal or at least remand for a hearing by a referee is required under the circumstances; (2) although there were delays in getting to trial, there is no evidence that defendant was responsible for those delays; (3) the only other substitution occurred because the public defender's office was relieved due to "overload"; (4) his acknowledgment that he was not ready to proceed to trial the following week was not necessarily a request for a continuance; (5) the trial court did not ask why his request came as late as it did; (6) "there may have been other, not yet expressed, reasons for the request for self-representation," other than defendant's dissatisfaction with counsel's delay in providing discovery material as discussed at the Marsden hearing; (7) the trial court's error was not harmless, since he "could not have done any worse," he may have decided to testify and corroborate accounts of witnesses concerning his state of intoxication and explain that he did not have the specific intent required for the offenses of burglary and attempted carjacking.

Defendant cites but attempts to distinguish People v. Ruiz (1983) 142 Cal. App.3d 780 (Ruiz). In Ruiz, the defendant sought substitution of counsel six days before trial, saying that, if his request was denied, he wanted to represent himself.  The trial court in Ruiz heard the defendant's complaints about counsel and denied his request for substitution and for self-representation, noting that the latter request included an implied request for a continuance that the defendant confirmed and the prosecution opposed.  (Id. at pp. 784-786.)  Unlike the case presently before us, the trial court in Ruiz expressly concluded that defendant's requests were not made as delaying tactics.  (Id. at p. 786.)

Even so, Ruiz found the trial court did not abuse its discretion in denying the defendant's request for self-representation as untimely in that the defendant's request could have been made much earlier and that a continuance of the trial would have been required. (Ruiz, supra, 142 Cal. App.3d at p. 791.) There, as here, the trial court did

not inquire of defendant as to his reasons for his late request in accordance with Windham.  (Ruiz, supra, at pp. 791-792.)

Defendant attempts to avoid Ruiz by arguing that, unlike the defendant in Ruiz, his motion was not conditioned upon obtaining a continuance.  But, in fact, it was.  When asked if he would be ready for trial "next week," that is, on May 11, defendant said "no."  A request for a continuance is necessarily implied by that answer.  It is of no importance that he did not then add "and therefore I will need a continuance."

Defendant argues that, since he did not make a specific request for a continuance in conjunction with his Faretta motion, the trial court abused its discretion in denying the motion, citing People v. Tyner (1977) 76 Cal. App.3d 352 and People v. Nicholson (1994) 24 Cal. App.4th 584.  Both cases are distinguishable.

In Tyner, the defendant asked to represent himself on the first day of trial and said he was ready to proceed that day and had questions prepared.  (People v. Tyner, supra, 76 Cal. App.3d at pp. 354-355.)  The reversible per se standard applied. ( Id. at pp. 355-356.)  In Nicholson, there was no concurrent request for substitute counsel and no request for a continuance.  (People v. Nicholson, supra, 24 Cal. App.4th at pp. 588-594.)

Moreover, defendant's request to represent himself seems to have anticipated the trial court's ruling on his Marsden motion and appears to have been made solely in frustration over the trial court's refusal to substitute counsel.  (See People v. Hines (1997) 15 Cal.4th 997, 1028; People v. Skaggs (1996) 44 Cal. App.4th 1, 5-6.)

We conclude that the trial court did not abuse its discretion in denying defendant's Faretta motion as not having been made in a timely fashion.  His court appointed counsel had been his attorney since September 14, 2004, and defendant did not make his Faretta motion until May 5, 2005, at the trial readiness conference.  Defendant stated at the Marsden hearing on May 5, 2005, that he had been asking for the discovery for six months.  There were four court hearings in January 2005 and three court hearings in March 2005.  There is nothing in the record to suggest defendant did not have the opportunity and, according to him, a reason to ask to represent himself before May 5, 2005 – at a time when the trial date would have had, again, to be continued – if that is what he truly wanted to do.  (See People v. Burton (1989) 48 Cal.3d 843, 853; People v. Hernandez (1985) 163 Cal. App.3d 645, 654; Ruiz, supra, 142 Cal. App.3d at p. 791.)

Defendant complains that he was not asked for his reasons for his request for self-representation and it is "an unwarranted leap of faith" to conclude that reasons other than dissatisfaction over

23

1      discovery "were nonexistent." But defendant made no other
       complaint about the manner of his representation at the <u>Marsden</u>
2      hearing and it is speculative at best to suggest that there were other,
       unexpressed reasons for his request.

3
       Finally, any error in the trial court's failure to weigh the <u>Windham</u>
4      factors on the record is harmless. Defendant's contention that the
       outcome of the trial, had he represented himself, would have been
5      more favorable is fanciful. "[A] defendant who represents himself
       virtually never improves his situation or achieves a better result
6      than would trained counsel. [Citation.]" (<u>Rivers</u>, <u>supra</u>, 20 Cal.
       App.4th at p. 1051.) Here, defendant was a security risk and was
7      subject to restraints. If he represented himself, most likely he
       would have done so from his chair to keep the jury from seeing his
8      waist chains and ankle shackles. Had defendant testified, the
       prosecutor would have impeached him with his prior convictions,
9      which included assault with a deadly weapon and receiving stolen
       property. The trial court's failure to weigh the <u>Windham</u> factors on
10     the record is inconsequential. (<u>Watson</u>, <u>supra</u>, 46 Cal.2d at p. 836.)

11    (Opinion at 7-16.)

12          The United States Supreme Court has held that a criminal defendant has a

13    constitutional right to represent himself at trial. <u>Faretta v. California</u>, 422 U.S. 806, 832 (1975).

14    That right is not absolute, however, as the Supreme Court has recognized: "The defendant must

15    'voluntarily and intelligently' elect to conduct his own defense, . . . and most courts require him

16    to do so in a timely manner." <u>Martinez v. Court of Appeal</u>, 528 U.S. 152, 161-62 (2000). The

17    Ninth Circuit Court of Appeals has determined that "a timeliness element in a <u>Faretta</u> request is

18    'clearly established Federal law, as determined by the Supreme Court.'" <u>Marshall v. Taylor</u>, 395

19    F.3d 1058, 1061 (9th Cir. 2005) (quoting <u>Moore v. Calderon</u>, 108 F.3d 261, 265 (9th Cir. 1997),

20    <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Williams</u>, 529 U.S. at 412- 13). Specifically, a request to

21    represent oneself made "well before the date of trial" and "weeks before trial" is timely. <u>Id.</u>

22    However, "[b]ecause the Supreme Court has not clearly established when a <u>Faretta</u> request is

23    untimely, other courts are free to do so as long as their standards comport with the Supreme

24    /////

25    /////

26    /////

1    Court's holding that a request 'weeks before trial' is timely.'" <u>Id.</u>[3]

2           Petitioner's request to represent himself, which was made six days before the

3    scheduled trial date, fell well inside the "weeks before trial" standard set forth in <u>Faretta</u>.  Under

4    these circumstances, the California Court of Appeal was not objectively unreasonable in

5    concluding that petitioner's motion for self-representation was untimely.  <u>See</u> <u>Stenson v.</u>

6    <u>Lambert</u>, 504 F.3d 873, 884 (9th Cir. 2007) ("[t]he Supreme Court has never held that <u>Faretta's</u>

7    'weeks before trial' standard requires courts to grant requests for self-representation coming on

8    the eve of trial"; therefore, the state court's "determination that [petitioner's] request to proceed

9    pro se [which first came on the twentieth day of voir dire and on the verge of jury impanelment]

10   was untimely is not objectively unreasonable under AEDPA"); <u>Marshall</u>, 395 F.3d at 1061

11   (<u>Faretta</u> request found untimely where it was made on the morning of trial but prior to jury

12   selection); <u>see</u> <u>also</u> <u>United States v. Edelman</u>, 458 F.3d 791, 809 (8th Cir. 2006) (finding no

13   abuse of discretion in denying defendant right to represent himself when the request was made

14   five days before start of the scheduled trial and was done to delay or disrupt the trial); <u>Menefield</u>

15   <u>v. Tilton</u>, No. CV 04-9829-GHK (PLA), 2008 WL 2620180, *8 (C.D. Cal., Jul. 1, 2008) (state

16   court did not unreasonably apply <u>Faretta</u> in denying as untimely motion for self-representation

17   which was made eight days before trial was scheduled to begin).  Here, it was not objectively

18   unreasonable for the state courts to find that a request for self-representation made six days

19   before trial is set to begin was untimely.  28 U.S.C. § 2254(d); <u>Marshall</u>, 395 F.3d at 1060-61.

20          The California Court of Appeal also concluded that petitioner's <u>Faretta</u> motion

21   was properly denied on the basis that it was made for the purpose of securing delay.  The Ninth

22   Circuit has held that to preserve the right to self-representation, a defendant must make a timely

23   _____

24          [3]  The Ninth Circuit has held that a <u>Faretta</u> request made before the jury is impaneled is
     timely unless the request is made as a tactic to secure delay.  <u>See</u> <u>Armant v. Marquez</u>, 772 F.2d
25   552, 555 (9th Cir.1985).  However, when deciding a habeas petition, a circuit court's
     "independent consideration of the [timing] issue is neither relevant, nor necessary to dispose of
26   the question presented."  <u>Marshall</u>, 395 F.3d at 1061 n.17 (quoting <u>Clark v. Murphy</u>, 331 F.3d at
     1062, 1069 (9th Cir. 2003)).

and unequivocal request to do so which is not a tactic to secure delay.  Armant v. Marquez, 772

F.2d 552, 555 (9th Cir. 1985).  In deciding whether a timely request was otherwise made for the

purpose of delay, the court must examine the events preceding the request to determine if they

are consistent with a good faith assertion of the Faretta right and whether the defendant could

reasonably be expected to have made the request at an earlier time.  Fritz v. Spalding, 682 F.2d

782, 784-85 (9th Cir. 1982).  If a defendant accompanies his motion to proceed in pro per with a

request for a continuance "[this] would be strong evidence of a purpose to delay."  Id. at 784.

See also Hirschfield v. Payne, 420 F.3d 922, 927 (9th Cir. 2005) (state court was not

unreasonable in concluding that a Faretta motion was made in order to delay the proceedings

where the defendant requested self-representation one day before trial was scheduled to begin,

had moved to substitute counsel on four previous occasions, and admitted that every time he

asked for a new attorney it was "close to trial").

        In Faretta the Supreme Court did not mention the issue of delay.  However, the

conclusion of the Ninth Circuit that a Faretta motion may be denied if it is interposed for

purposes of delay does not appear to be "contrary to" or an "unreasonable application" of the

holding in Faretta.  Therefore, even if petitioner's request for self-representation had been timely

made, the trial court could have properly denied that motion on the basis that it was merely a

tactic to delay the trial.  Although the petitioner in this case complained that his trial counsel had

failed to provide him with "paperwork," counsel explained that he had given petitioner all

discovery as a matter of practice, and shortly after petitioner asked for it.  Petitioner had nothing

to add to counsel's comments in this regard.  Petitioner also complained to the trial court that he

had been "inadequately represented," but he provided no specifics and the trial court ascertained

that petitioner's trial counsel was an experienced criminal defense attorney.  Trial counsel stated

that he was ready to proceed with the trial, but petitioner stated that he was not ready to do so.

Further, there is no reason apparent from the record why petitioner could not have made his

request to represent himself earlier in the proceedings.  As noted by the California Court of

1   Appeal, petitioner had numerous opportunities prior to the trial readiness conference to bring his

2   Faretta motion.  All of these factors provide support for the trial court's conclusion that

3   petitioner's Faretta motion was interposed purely for the purpose of securing a delay of the trial.

4           For the foregoing reasons, the state appellate court's conclusion that petitioner's

5   Faretta motion was properly denied is not contrary to or an unreasonable application of federal

6   law.  Accordingly, petitioner is not entitled to relief on a claim that he was denied his right to

7   represent himself.  See 28 U.S.C. § 2254(d).

8       4.  Evidentiary Hearing

9   III.  Request for Evidentiary Hearing

10          Petitioner requests an evidentiary hearing on the claims raised in the instant

11  habeas petition.  (Traverse at 4; P&A at 2.)

12          Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under

13  the following circumstances:

14          (e)(2) If the applicant has failed to develop the factual basis of a
            claim in State court proceedings, the court shall not hold an
15          evidentiary hearing on the claim unless the applicant shows that-

16              (A) the claim relies on-

17              (i) a new rule of constitutional law, made retroactive to cases on
                collateral review by the Supreme Court, that was previously
18              unavailable; or

19              (ii) a factual predicate that could not have been previously
                discovered through the exercise of due diligence; and
20
                (B) the facts underlying the claim would be sufficient to establish
21              by clear and convincing evidence that but for constitutional error,
                no reasonable fact finder would have found the applicant guilty of
22              the underlying offense[.]

23          Under this statutory scheme, a district court presented with a request for an

24  evidentiary hearing must first determine whether a factual basis exists in the record to support a

25  petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate."  Baja v.

26  Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).  See also Earp v. Ornoski, 431 F.3d 1158, 1166

27

1 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner

2 requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim

3 for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v.

4 Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th

5 Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts

6 which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998)

7 (internal quotation marks and citation omitted).

8       The court concludes that no additional factual supplementation of the record is

9 necessary in this case and that an evidentiary hearing is neither necessary nor appropriate with

10 respect to any of the claims raised in the instant petition. The facts alleged in support of these

11 claims, even if established at an evidentiary hearing, would not entitle petitioner to federal habeas

12 relief. Therefore, petitioner's request for an evidentiary hearing should be denied.

13 CONCLUSION

14       For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

15 application for a writ of habeas corpus be denied.

16       These findings and recommendations are submitted to the United States District

17 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-

18 one days after being served with these findings and recommendations, any party may file written

19 objections with the court and serve a copy on all parties. Such a document should be captioned

20 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

21 shall be served and filed within seven days after service of the objections. Failure to file

22 objections within the specified time may waive the right to appeal the District Court's order.

23 Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

24 1991). In any objections he elects to file petitioner may address whether a certificate of

25 appealability should issue in the event he elects to file an appeal from the judgment in this case.

26 See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant).

DATED: May 3, 2010.

_Dale A. Drozd_

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
kriske1683.hc